**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RIDDELL, INC., | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| SHAWN STIMMEL and BSN SPORTS, LLC, | ) | |
| a Delaware Limited Liability Company, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Riddell, Inc. ("Riddell"), by and through its attorneys, for its Complaint for Injunctive Relief and Damages against Defendants Shawn Stimmel ("Stimmel") and BSN Sports, LLC ("BSN Sports"), alleges as follows:

### NATURE OF THE CASE

1.      Until his recent abrupt resignation, Stimmel served as a sales representative for KollegeTown Sports ("KollegeTown"), a sports apparel company wholly owned and recently acquired by Riddell (together, with KollegeTown, the "Company"). Despite his contractual non-competition obligations to Riddell and Riddell's demand for his strict compliance with the same, Stimmel has announced that he is commencing employment with the Company's competitor BSN Sports in a role that is directly competitive with the Company and that imperils the Company's confidential information, goodwill, and customer relationships.

2.      In 2015, Riddell expended considerable resources to acquire KollegeTown, a leader in the athletic apparel industry. In connection with that acquisition, Riddell retained as full-time employees key sales representatives, including Stimmel, who, in connection with the

acquisition, executed an agreement with Riddell that contained, among other things, a post-employment non-competition restriction.

3.      During his years of employment at the Company, Stimmel was exposed to integral customer relationships and had access to some of the Company's most competitively sensitive confidential information, including the identities of and contact information for its customers and the Company's commercial terms with the same, including pricing and volume.

4.      Were Stimmel to continue employment at BSN Sports, the confidential information, relationships, and goodwill Stimmel has obtained and developed while at the Company would give BSN Sports an unfair competitive advantage against the Company, to the Company's significant detriment.

5.      In October 2015, Stimmel and Riddell specifically contracted to avoid this outcome, when Stimmel voluntarily entered into a Sales Representative Employment Agreement, which provided, among other things, that Stimmel would not, for eighteen (18) months following the termination of employment with Riddell, engage in sales activities competitive with that of the business of Riddell.

6.      Despite his contractual obligations and the irreparable harm the Company faces, Stimmel has chosen to blatantly disregard his contractual commitments and to work for sports apparel distributor BSN Sports in a directly competitive capacity.

7.      Despite its full awareness of Stimmel's contractual obligations to Riddell, BSN Sports has intentionally and unjustifiably caused Stimmel to breach those obligations. Indeed, when Stimmel raised the issue of his ongoing non-compete restrictions with BSN Sports, BSN Sports told Stimmel that they were aware and would handle it.

**THE PARTIES**

8.      Plaintiff Riddell, Inc. is an Illinois corporation with its principal place of business at 1700 W. Higgins Road, Suite 500, Des Plaines, Illinois 60018.  Riddell is a premier designer and developer of athletic equipment and apparel.  Riddell wholly owns KollegeTown, an athletic apparel company Riddell acquired in October 2015.

9.      Defendant Shawn Stimmel is an individual and a citizen of Iowa who resides, upon information and belief, at 2806 Dawn Avenue SW, Cedar Rapids, IA 52404.  Stimmel, a former sales representative for KollegeTown, is party to a Sales Representative Employment Agreement with Riddell, a true and correct copy of which is attached hereto as Exhibit A. Stimmel has recently accepted employment with BSN Sports.

10.      Defendant BSN Sports, LLC is a Delaware limited liability company with its principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.  BSN Sport's sole member is Varsity Brands Holding Co., Inc., an Indiana corporation with its principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.  BSN Sports is an athletic equipment and apparel company directly competitive with the Company.

11.      As a result of the unlawful acts described above, Riddell has suffered, and will continue to suffer, substantial monetary damages, as well as injuries not readily susceptible to calculation or fully compensable by monetary damages.

**JURISDICTION AND VENUE**

12.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, and Riddell, unlike each Defendant, is a citizen of Illinois; thus complete diversity of citizenship exists.

13.      This Court has personal jurisdiction over Stimmel and venue is appropriate in this

judicial district because, pursuant to Section 9 of Stimmel's Agreement, Stimmel submitted to personal jurisdiction of the courts of Illinois: "The Representative consents to the jurisdiction of the courts of Illinois and the application of Illinois law with respect to any matter or thing arising out of this Agreement." Jurisdiction is also appropriate against Stimmel because he threatened to breach contractual obligations owed to Riddell in Illinois and, while he was employed by the Company, he engaged in regular, substantial, and not isolated, activities within the State of Illinois, including by regularly conducting business within Illinois. For example, one of Stimmel's key accounts was a university located within this judicial district.

14.     This Court has jurisdiction over BSN Sports because BSN Sports is engaged in regular, substantial, and not isolated, activities within the State of Illinois, is registered to do business in Illinois, and is in fact actually doing substantial business through offices in Bourbonnais, Danville, Yorkville, Rantoul, and Springfield. This Court also has personal jurisdiction over BSN Sports because the claims stated against BSN Sports arise from and are related to its contacts with and activities in Illinois.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to these claims occurred in this district, including Stimmel's threatened breaches of the contractual duties owed to Riddell and BSN Sports' efforts to interfere with those duties.

## FACTUAL BACKGROUND

### The Company's Business

16.     Riddell is a premier designer and developer of football helmets, protective sports equipment, head impact monitoring technologies, apparel, and related accessories. A recognized leader in helmet technology and innovation, Riddell is the leading manufacturer of football

helmets and shoulder pads, and a top provider of reconditioning services (cleaning, repairing, repainting, and recertifying existing equipment).

17.    In recent years, Riddell has expended signature resources to grow its apparel business and bolster its sales force.

18.    In October 2015, Riddell strengthened its apparel offering and distribution by acquiring KollegeTown, an innovative leader in the athletic apparel industry for youth, high school and college teams, and corporate sales.

19.    The acquisition of KollegeTown, which excels in screen printing and embroidery on athletic apparel, provided Riddell with access to new and unique sales channels for its apparel, while expanding its capabilities, customer service, and product offering.

20.    KollegeTown is a "team dealer," which connects, among other clients, colleges, high schools, and youth sports organizations with major brands to sell them various types of apparel.  KollegeTown's sales representatives sell various brands to schools, teams, and even corporate clients nationwide.  The bulk of KollegeTown's business, however, is in the Midwest.

21.    KollegeTown operates as a division of Riddell and now manages Riddell's growing apparel category.

22.    In connection with the acquisition, and as a condition thereof, Riddell procured the execution of Sales Representative Employment Agreements by KollegeTown's key customer-interfacing sales representatives, including Stimmel.  This was a critical component of the transaction, as significant value of KollegeTown lay in the goodwill, customer relationships, and confidential information it had developed throughout its history in the business.  The restrictions and obligations in the Sales Representative Employment Agreements were key to protecting the value of what Riddell was paying to acquire.

5

23.     Stimmel, who had been with KollegeTown since its inception, was such a key sales representative that in connection with the transaction, he received a transaction bonus of $15,000.  As an additional term of the transaction, Riddell adopted a growth incentive plan, under which key sales representatives, including Stimmel, could earn financial incentives for sales growth.

**Stimmel Voluntarily Enters into the Sales Representative Employment Agreement
in Connection with Riddell's Acquisition of KollegeTown**

24.     In connection with the KollegeTown acquisition, and as a condition thereof, Riddell extended an offer of employment to Stimmel as a KollegeTown Sales Representative. Stimmel accepted Riddell's offer by countersigning a Sales Representative Employment Agreement (the "Agreement") dated October 30, 2015, the day Riddell acquired KollegeTown.

25.     In consideration for Stimmel's acceptance of the terms in the Agreement, Riddell, in addition to continuing to employ Stimmel, provided a financial boon to Stimmel in the form of a new-growth incentive compensation equaling 1 percent of growth targets.  Section 5.3.

26.     In signing the Agreement, Stimmel agreed to abide by a non-competition clause as follows:

> Representative hereby agrees that for a period of eighteen (18) months following the resignation or termination of his employment for any reason, Representative will not engage directly or indirectly (as an employee, contractor, owner, or agent), in sales, sales management, or strategic marketing related activities competitive with the Company Business, within the geographic area assigned to the Representative by the Company during the last year of his employment.

Section 5(a).

27.     "Company Business" is defined in the Agreement as "any business that competes with the Company in the sales, distribution, and reconditioning of football equipment and athletic apparel."  *Id.*

28.     In executing the Agreement, Stimmel also agreed to abide by eighteen (18) month customer and employee non-solicitation obligations.  Section 7.3.

29.     In addition to his non-competition and non-solicitation obligations, Stimmel also agreed that he will not, during or after his employment, use or disclose any Confidential Information.  Section 7.1.  "Confidential Information" is defined in the Agreement to include, among other things, non-public information of the Company concerning costs, profits, and pricing; selling and pricing procedures and techniques; and customer information, including their identities, special demands, and past, current, and anticipated requirements for products or services.  Section 7.2.

30.     The Company is entitled to injunctive relief in the event of a breach of the non-competition or non-solicitation obligations by Stimmel, who specifically acknowledged:

> In the event of a breach or a threatened breach of this Agreement by the Representative, the Representative acknowledges that Riddell will face irreparable injury which may be difficult to calculate in dollar terms and that Riddell shall be entitled, in addition to remedies otherwise available at law or in equity, to temporary restraining orders and preliminary injunctions and final injunctions enjoining such breach or threatened breach.

Section 9.

31.     The Agreement is governed by Illinois law.  *Id.*

32.     Stimmel's execution of the Agreement was knowing, willful, and informed.

33.     Riddell has fully performed all of its obligations to Stimmel, including all conditions precedent under the Agreement.

34.     The Agreement is supported by adequate consideration, is reasonable in scope, and is not more extensive than is reasonable and necessary for Riddell to protect its legitimate business interests, including but not limited to its confidential information and trade secrets, stable workforce, customer relationships, and goodwill.

**Stimmel's Employment by the Company**

35.     After Riddell's acquisition of KollegeTown, Stimmel retained his role as a key KollegeTown sales representative.  Stimmel was responsible for, among other things, selling apparel to college varsity, club, and intramural teams; selling uniforms to high schools; and setting up websites and programs for parents, fans, and others to buy school-branded merchandise.

36.     In this role, Stimmel was at the forefront of servicing, maintaining, and developing critical customer relationships across the country.  Stimmel's sales territory was national in scope.  Indeed, in his last year at the Company, Stimmel had customers in 24 of 50 States, extending from the East to West coasts.  Stimmel also maintained key accounts in Illinois, which resulted in substantial sales.  These relationships, which Stimmel would not have had but for his employment, were developed and cultivated by the Company at great time and expense and over a number of years.

37.     In this capacity Stimmel was exposed to and helped to develop some of the Company's most competitively sensitive confidential information regarding the customers with which it worked.  This information includes, among other things, the identities and contact information of the Company's customers; customer preferences; and the commercial terms of the agreements between the Company and its customers, such as pricing and volume.  The Company developed this confidential information through its history of work in the industry, and substantial commitment of time and resources.

38.     Stimmel also had access to and/or helped develop the Company's confidential information concerning sales generated by his territory; strategic marketing and sales plans; pricing strategies and structures to best market and position the Company's services and products to new and existing customers; and non-public internal financial and performance information.

39.     If a competitor obtained Stimmel's knowledge of the confidential information to which he was privy by virtue of his employment at the Company, the competitor would potentially be able to use such information to eviscerate the competitive advantage that the Company has spent years and significant resources developing and which Riddell acquired at considerable expense, particularly in Illinois where Stimmel had significant accounts.

40.     A competitor with access to the Company's customer information would have an unfair competitive advantage because it would not have to devote the substantial time and cost required to compile and to develop such information and could quickly gain access to customers that otherwise might not be possible.  Indeed, a competitor armed with Stimmel's knowledge could use that information to undercut every aspect of the Company's apparel business in which Stimmel was involved.

### Stimmel Abruptly Tenders His Resignation from the Company and Accepts Competitive Employment with BSN Sports, Which Induced the Same

41.     On or about December 4, 2018, Stimmel tendered his resignation from the Company effective immediately.  Upon inquiries from the Company, Stimmel disclosed that he was going to work for BSN Sports, and, in fact, would be traveling for training in connection with his new employment just days later, on December 9.

42.     BSN Sports engages in business competitive with the business of the Company within the meaning of the Agreement.

43.     Like the Company, BSN Sports is a distributor of sports apparel and equipment. It, too, serves as a "team dealer" that connects clients such as colleges, high schools, and youth teams to major brands to sell them various types of apparel.  BSN Sports, which operates in 40 offices, including five in Illinois, and through over 850 sales representatives nationwide, directly competes in sales with the Company.

44.     The market for services and products of the type offered by the Company and BSN Sports is highly competitive, requiring a combination of pricing, market contacts, effective sales strategies, and interpersonal skills for success.  Sales revenues can be substantial.  Indeed, Stimmel alone sold nearly a million dollars' worth of product in 2018.

45.     As a testament to the intensely competitive market, BSN Sports similarly requires its sales representatives to agree to non-competition, non-solicitation, and confidentiality obligations.  Indeed, just this year, BSN Sports sued a former sales representative who went to work for a competitor for breach of such restrictive covenants.  *See BSN Sports, LLC v. Brad Logan*, No. 3:18-CV-029-MPM-RP (N.D. Miss. Feb. 2, 2018), Dkt. 1.

46.     BSN Sports' is and was at all relevant times aware of Stimmel's Agreement and the restrictive covenants contained therein, including the eighteen (18) month non-competition restriction.  Indeed, when Stimmel was instructed by Riddell that his employment at BSN Sports was a direct breach of his non-competition obligations, Stimmel responded that BSN Sports told him that BSN Sports was aware of and would defend or handle the issue, and assured Stimmel that he need not worry.

47.     BSN Sports solicitation and hiring of Stimmel appears to be part of BSN Sports' recent campaign to hire the Company's top sales representatives in blatant disregard for their contractual obligations to the Company.  Indeed, on December 6, 2018, Riddell was forced to initiate a separate lawsuit against BSN Sports in the United States District Court for the Southern District of Texas for BSN Sports' tortious interference with a covenant not to compete between Riddell and another of its former sales representatives.  *See Riddell, Inc. v. Todd Giambrone & BSN Sports, LLC*, No. 4:18-cv-4598 (S.D. Tex. Dec. 6, 2018), Dkt. 1.

48.     The Company believes that Stimmel will be a key sales representative for BSN

Sports, will engage in sales activities directly competitive with the Company, and will have direct information about the same brands and customers with whom Stimmel worked or about whom Stimmel possessed confidential information while employed by the Company.

49.     Stimmel's deep knowledge of the Company's customers and the details of the Company's confidential arrangements with the same will provide BSN Sports an unfair competitive advantage, at the Company's expense, in its solicitation of such customers. These contacts will prove highly valuable to BSN Sports as it attempts to erode the Company's market share in the Midwest to its advantage.

50.     Stimmel's employment with BSN Sports places the Company's confidential and trade secret information at grave risk, would give an unfair competitive advantage to BSN Sports at the Company's expense, and would lead to the erosion of highly valuable goodwill and customer relationships in which the Company has invested significant resources.

**COUNT I**
**BREACH/THREATENED BREACH OF CONTRACT**
**(AGAINST STIMMEL ONLY)**

51.     Riddell realleges and restates paragraphs 1–50 as if fully restated herein.

52.     The Agreement signed by Stimmel is a valid and enforceable contract entered into in exchange for good and valuable mutual consideration.

53.     The restrictive covenants in the Agreement are reasonably necessary to protect Riddell's legitimate protectable business interests and are reasonable in terms of scope.

54.     Riddell has fully performed every material obligation it owes to Stimmel under the Agreement, including, without limitation, by providing Stimmel with the following: (i) continuing employment for a significant period of time after his execution of the Agreement; (ii)

confidential, proprietary, and trade secret information; (iii) access to customers; and (iv) compensation and employment benefits, including growth incentives.

55.    The Agreement prohibits Stimmel, for a period of eighteen (18) months after the termination of his Riddell employment, from engaging in sales, sales management, or strategic marketing activities with a competitor in the area assigned to Stimmel in his last year of employment, which was nationwide.

56.    BSN Sports is competitive with the business of the Company within the meaning of the Agreement.

57.    Stimmel has threatened to breach his Agreement by, among other things, working in a sales capacity for BSN Sports.

58.    Unless Stimmel is enjoined from violating the terms of the Agreement, Riddell will suffer irreparable and incalculable harm well in excess of $75,000, including the loss of goodwill, customer relationships, and proprietary and confidential information.

59.    Riddell lacks an adequate remedy at law and is entitled to injunctive relief.

## COUNT II
### TORTIOUS INTERFERENCE WITH CONTRACT
#### (AGAINST BSN SPORTS ONLY)

60.    Riddell realleges and restates paragraphs 1–59 as if fully restated herein.

61.    Stimmel's Agreement is a valid and enforceable contract.

62.    BSN Sports is and was at all relevant times aware of Stimmel's Agreement and the restrictive covenants contained therein.

63.    BSN Sports intentionally and unjustifiably induced and/or is threatening to induce Stimmel to breach the Agreement by, among other wrongful acts, aiding and abetting,

persuading, encouraging, inciting, and/or causing Stimmel to engage in competition with the Company in violation of his contractual non-competition obligations.

64.      As a result of BSN Sports' tortious interference and inducement, Stimmel has threatened to breach the Agreement by, among other wrongful acts, engaging in competition with the Company as an employee of BSN Sports in violation of his contractual non-competition obligations.

65.      Riddell has suffered, and will continue to suffer, damages because of BSN Sports' conduct.

66.      Unless BSN Sports is enjoined from tortiously interfering with the Stimmel Agreement, Riddell will be irreparably harmed.  No adequate remedy at law exists for this tortious interference.

## REQUEST FOR JURY DEMAND

67.      Riddell demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Riddell respectfully requests that judgment be granted in their favor and against Stimmel and BSN Sports, and the Court enter an Order:

(i)      Enjoining Stimmel from rendering any services, directly or indirectly, as an employee, officer, consultant, or in any other capacity, to BSN Sports, in violation of the contractual obligations Stimmel owes Riddell as contained in the Agreement;

(ii)      Enjoining BSN Sports, its officers, agents, servants, employees, and attorneys, and those acting in concert with them, from aiding or abetting or causing Stimmel to violate the contractual obligations he owes to Riddell as contained in the Agreement;

(iii)    Awarding Riddell compensatory, incidental, consequential, and punitive damages in an amount to be determined at trial;

(iv)    Awarding Riddell its costs and expenses, including attorneys' fees and costs (*see* Section 9 of the Agreement); and

(v)    Awarding Riddell such other relief as this Court deems just and proper.


Dated:  December 7, 2018

Respectfully submitted,

RIDDELL, INC.

By: /s/ *William C. O'Neil*
     One of Its Attorneys

William C. O'Neil
Benjamin M. Ostrander
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)
woneil@winston.com
bostrander@winston.com

14