UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RIDDELL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 8062 |
| | ) | |
| SHAWN STIMMEL and BSN SPORTS, LLC, | ) | Judge Elaine E. Bucklo |
| | ) | |
| Defendants. | ) | |

## ORDER

Riddell, Inc. (Riddell) seeks a preliminary injunction against its former employee Shawn Stimmel and his new employer, BSN Sports, Inc. (BSN), based on a non-competition agreement signed by Stimmel when he was at Riddell. Riddell argued in its complaint and motion for a preliminary injunction that Stimmel's new employment harms Riddell's confidential information, goodwill and customer relationships. In response to defendants' motion to dismiss, Riddell argued that the non-competition agreement, which both sides agree is governed by Illinois law, should be characterized as a "covenant to a purchaser" ancillary to the sale of a business, and therefore scrutinized more leniently than would be a covenant to an employer. I could not make the determination of which standard should be applied on the basis of the pleadings alone and therefore denied defendants' motion to dismiss. The parties thereafter conducted discovery and I held an evidentiary hearing at which various people testified. It is now clear that the non-competition agreement is an ordinary employment agreement. I deny the motion for a preliminary injunction for the reasons stated in this opinion.

I.

Shawn Stimmel testified credibly as follows: After graduating from Coe College in Iowa in 1998, where he played basketball and ran track, Stimmel attended graduate school and then worked as first an assistant and later head basketball coach and golf coach at several colleges. In 2008 he was recruited to become a sales representative at a company called Impact Sports, then owned by Tom Handlen. Using the numerous contacts he had made either playing or coaching, Stimmel was apparently a successful sales person, selling Nike and other brand sports apparel to high schools and colleges. Handlen sold Impact Sports in 2011, and Stimmel left the company, working for his father as a welder for about a year. At that time, Handlen formed a new company, KollegeTown, also in the business of selling sports apparel to high schools and colleges, and Stimmel again became a sales representative for the company. At both companies, Stimmel worked out of his Iowa home. At some point, KollegeTown began selling only Under Armour brand clothing.

In 2015, Handlen sold KollegeTown to Riddell. Handlen became president of the KollegeTown division of Riddell. Stimmel was not involved in the negotiations for the sale, and was told about the sale after the decision had been made. At the time of the sale, Stimmel, along with 29 other KollegeTown employees and executives, signed an employment agreement. Stimmel's agreement contained a non-compete clause that was to go into effect whenever he left Riddell's employment.

Sometime in 2018, someone from BSN, a competitor of Riddell, contacted Stimmel and asked him if he was happy at KollegeTown. Stimmel in fact was not happy, for several reasons. A change in software in 2018 for filling orders had caused serious problems, resulting in delays that were both embarrassing to Stimmel, who had again built his reputation on the basis of long term relationships and good customer service, and difficult for teams and schools that needed equipment

2

at a certain time. In addition, some schools with whom Stimmel had relationships wanted to buy Nike or another brand not sold by Riddell. Finally, Stimmel was not happy with his compensation. Eventually, Stimmel was contacted by people at BSN with whom he had worked in the past, and in December, 2018 he accepted BSN's offer of employment. When he told Tom Handlen his decision, Handlen asked if Stimmel would get better pay at BSN, and when he was given an affirmative answer, congratulated Stimmel and wished him well on the new job. Stimmel spoke to a person in Human Resources at Riddell, who asked him to return his cell phone and computer, which he did. He was not asked to return documents he had in his home.[1]

The current litigation began a few days later. In the months since then, Stimmel has sold $41,000 worth of apparel – to St. Ambrose University, Iowa State University and his parents' welding company. St. Ambrose University has a five year all-school agreement with BSN signed in 2017, so presumably it would not be purchasing products from Riddell for at least several years. Iowa State was not one of Stimmel's customers when he was at Riddell. Riddell's vice president of sales, Jeff Handlen, testified that BSN has not taken any business from Riddell in the months since Stimmel began his employment there.

## II.

Riddell's basic argument for enforcing the restrictive non-compete agreement signed by Stimmel is that it was a covenant that was part of a company purchase and not a covenant to an employer. The distinction is made in *Business Records Corp v. Lueth*, 981 F.2d 957 (7th Cir. 1992). In that case the plaintiff purchased defendant employer's company with the condition that defendant

---

[1]The documents were returned when sought, and there is no evidence that Stimmel used the documents.

sign a non-competition agreement. As part of the sale, the defendant in *Lueth* became president of the purchased company and received 3750 shares of the parent company's stock. He signed the purchase agreement. The Seventh Circuit, applying Illinois law, noted that a covenant to a purchaser "poses a lesser threat of restraining trade or competition because the seller has bargaining power that a typical incoming at-will employee would not be expected to have." 981 F.2d at 959-60. As a result, "courts are less likely to declare [the covenant] invalid." *Id.* at 959.

The contrast between the facts in this case and in *Lueth* demonstrate that the covenant here should be treated as an ordinary employment agreement. Stimmel had no say in the purchase. He did not even see the purchase agreement until this lawsuit was filed, years later. He was a sales representative (one of a number of them) before and after the sale. He did not become an officer in Riddell. He received no stock in the company. While Riddell argues that Stimmel's signed employment agreement was a condition to the sale, there is simply no evidence that he was of such importance that the sale would not have gone through if he had not signed the agreement. Stimmel's employment agreement was not referenced in the purchase agreement, which stated only that sellers had to deliver signed employment agreements by 34 individuals listed in a corresponding schedule at closing. It did not mention restrictive covenants. It appears only 29 employment agreements were ever executed.[2]

Neither was the $15,000 bonus Stimmel received following the sale actually consideration

---

[2] This is disputed, but Riddell's CFO, Allison Boersma, who claimed to have signed and received all of the employment agreements, could not say what happened to the missing agreements. Some of them were for other sales representatives who have since left Riddell. If there were such agreements, the fact that Riddell has not kept them is evidence that it did not take them very seriously.

for the employment agreement.  The selling president, Tom Handlen, decided to give Stimmel this amount because of Stimmel's loyalty to him in the past, and out of guilt for selling a second company at which Stimmel had come to work only to be sold at Handlen's instigation, and oddly "because Stimmel was good looking" or so he stated in his deposition. Tr. 369. Handlen gave 82 other people "transaction bonuses," some, like the one to his son Jeff, in the amount of $200,000. Notably, none of the employment agreements mention the bonus.  The only consideration mentioned in the agreements is continued employment.  The argument that Stimmel's employment agreement should be considered under the less demanding standard applicable to contracts that form part of a sale when analyzed under *Lueth* is simply without merit.

Presumably, the reason Riddell seeks the protection of the more lenient purchase test is that Illinois does not look kindly on other restrictive covenants in employment agreements.  Such a covenant is enforceable "only if the employer (1) shows that the restriction is reasonable in duration, geographical area, and scope of prohibited business activity, and (2) demonstrates either a near-permanent relationship between the employer and its customers, and that but for his association with the employer, the former employee would not have had contact with the customers, or the acquisition and attempted use of confidential information by the employee." *Harris* v. *Central Garden & Pet Company*, 2011 WL 3290334 (N.D. Ill. 2011) at 3, citing cases.  The evidence before me is that there are no near permanent relationships between customers and Riddell.  As Riddell's COO/CFO Allison Boersma testified, "Customers come and go.  They leave for a lot of different reasons all the time." Tr. 111 Testimony from every other witness at the evidentiary hearing on this motion substantiated her statement.  Customers change suppliers because of the brand being offered (or not offered), or service, or price.  The schools buying athletic apparel are sophisticated, and play

5

suppliers off each other, depending on each of these factors. Furthermore, although Stimmel was introduced to some customers as a result of his employment with KollegeTown/ Riddell, many of his relationships were developed before his employment with Riddell.

Riddell has also failed to show that it had any belief that the restrictive covenant was necessary to protect confidential information. Tom Handlen, Riddell's president, testified that "it's a hard business to keep things confidential because, once an agreement goes out, you have no idea if a coach is going to tell somebody else or what's going to happen." Tr. 372. For the most part, sales contracts (prepared by Riddell) with schools do not even contain confidentiality agreements. Indeed, Riddell puts pricing specials on social media. Other testimony showed that public university information is available on-line, and the witnesses appeared to be in agreement that they could figure out how much any school had to spend on the parties' products. Generally, coaches would provide that information as well. Riddell argues that it regularly included Stimmel in voluminous monthly reports containing detailed sales information, but that information went to a large number of people. In addition, the evidence showed that Riddell employees with access to at least as much allegedly confidential information as Stimmel had no restrictive covenants in their employment agreements. These included, among others, Roberta Kittelson, a daughter of Tom Hendlen, who ran KollegeTown's operations and continues to be employed by Riddell, and Marvin Siegert, who was KollegeTown's CFO.

Riddell focuses on two specific instances which occurred during BSN's recruitment of Stimmel. Stimmel did forward his list of customers, but the evidence showed that BSN would need to know who those customers were in order to avoid any violation of the restrictions in the employment agreement if it was enforceable. Other evidence showed that the names of customers

were not secret. Stimmel did attempt to use a single prospective contract improperly during those negotiations by telling BSN about the prospect, but Riddell nevertheless got the contract.[3] BSN's witness, Paul Brunelle, testified that BSN knew the value of the prospective contract from its own information.

Defendants also argue that the geographic scope of the agreement is overly broad and unreasonable. The agreement restricts Stimmel from engaging "directly or indirectly ... in sales, sales management or strategic marketing related activities competitive with the Company Business, within the geographic area assigned to [Stimmel] ... during the last year of his employment." No geographic area was actually assigned to him. In its motion for a preliminary injunction, Riddell argued that the prohibition should be nationwide, but now argues that the language should be interpreted to prohibit Stimmel from any activity in 25 states on the ground that he serviced at least one customer in each of the other 25 states. But it has shown no basis for rewriting the agreement's language in this manner. The proposed geographic limitation appears to be completely arbitrary.[4]

Under Illinois law, "[f]or a restrictive covenant to be valid and enforceable, the terms must

---

[3] Riddell also claimed that Stimmell violated his contract by talking to Brunelle about two other Riddell employees. The evidence showed that Brunelle, Stimmel and the other Riddell employees discussed by them had all worked together at Impact Sports. Apart from talking about their families, how the various people were doing, and indicating that others might also be interested in talking to BSN, Stimmel forwarded one telephone number. BSN later hired two of these people. One of them, Brad Horstmann, has also been sued by Riddell. That related case was transferred to me following the hearing in this case. Since I have not heard argument on the motion with regard to Horstmann, this opinion does not address his agreement.

[4] President Tom Handlen's employment agreement does have a geographic limitation. Despite the fact that he sells nationwide, in the event that he would leave Riddell, he is prohibited from competing against Riddell within 60 square miles of Riddell's Wisconsin headquarters.

be reasonable and necessary to protect a legitimate business interest of the employer....An employer seeking to enforce a restrictive covenant bears the burden of demonstrating that the full extent of the restraint is necessary to protect its interests." *Brown & Brown, Inc. v. Ali*, 592 F. Supp.2d 1009, 1044 (N.D. Ill. 2009), citing Illinois cases. Riddell has failed to demonstrate that Stimmel's restrictive covenant is necessary or reasonable. It has not shown that most of the allegedly confidential information with respect to customers was confidential at all or that it seriously tried to prevent people with access to that information from using it. Neither has it shown that the geographic limitation it asks me to write into the contract is reasonable.

In conclusion, Riddell has not shown a likelihood of success on the merits of its action against Stimmel or BSN with respect to its employment of Stimmel. Riddell's motion for a preliminary injunction is therefore denied.

ENTER ORDER:

ELAINE E. BUCKLO
UNITED STATES DISTRICT JUDGE

DATED: August 9, 2019